**Edwin L. (Ted) ROGERS, Jr., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**No. 326–89C.**

United States Claims Court.

Sept. 28, 1992.

**1024**

Edwin L. (Ted) Rogers, Jr., pro se.

John S. Groat, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant.

## ORDER

REGINALD W. GIBSON, Judge.

This military pay case is before the court on Plaintiff's Motion for New Trial, Rehearing, Amendment or Reconsideration and for Transfer and Stays of Statutes of Limitations and Fees, which was filed on July 6, 1992. In said motion, the plaintiff avers that the court should reconsider and amend its holding of June 23, 1992, 26 Cl.Ct. 255, wherein the court held that the plaintiff was only entitled to $4,187.70 in damages. Further, Mr. Rogers avers that we should re-transfer this case back to the United States District Court for the Eastern District of Virginia[1] because this court does not have jurisdiction to hear plaintiff's *newly*[2] averred claim for relief under the Federal Tort Claims Act.

For the reasons hereinafter expressed, we deny plaintiff's foregoing motion to reconsider and to transfer. Pursuant to relevant case law, plaintiff is only entitled to back pay and other benefits from the date of his involuntary discharge to the date of the expiration of his term of service, *i.e.*, legal discharge. Additionally, because the plaintiff failed to allege a tort claim pursuant to the Federal Tort Claims Act in his complaint filed with this court on July 6, 1989, there is no pending "claim" or "civil action filed in [this] court," to transfer to the district court pursuant to 28 U.S.C. § 1631.[3] Moreover, the plaintiff did not

---

1. Originally, plaintiff filed his complaint with the district court seeking "full reinstatement and back pay and benefits lost." The district court transferred the subject action, pursuant to the plaintiff's motion and the court's determination that it lacked jurisdiction, to the Claims Court on June 3, 1989.

2. Nowhere in either the Claims Court *complaint* or that of the District Court does the plaintiff claim that he is entitled to relief pursuant to the Federal Tort Claims Act. Plaintiff's *first* and only request for relief pursuant to said act is

contained in the subject motion and plaintiff's reply to the defendant's opposition to the subject motion filed July 6, 1992 and August 27, 1992, respectively.

3. 28 U.S.C. § 1631 reads in pertinent part:
"Whenever a civil action is filed in a court as defined in section 610 of this title ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought at the time it was filed...."

file a Federal Tort claim with the district court either. Consequently, the district court properly transferred plaintiff's *entire* case to this court.

## PROCEDURAL HISTORY

On December 19, 1991, the court filed an interlocutory opinion on the parties' cross-motions for summary judgment, wherein the court held that the plaintiff was entitled to reinstatement, back pay, and other benefits from the date of his involuntary discharge to the date of his legal discharge. In addition, the court ordered the Secretary of the Army, pursuant to a RUSCC 34(d) call, to "calculate the amount of any and all back pay and other benefits to which SP5 Rogers is entitled consistent with this opinion from the date of his involuntary discharge, *i.e.,* December 16, 1982, to the last day of the month in which said calculations are made." *Rogers v. United States,* 24 Cl.Ct. 676, 691–92 (1991).

On June 23, 1992, the court modified and corrected the first sentence within the last paragraph of its opinion of December 19, 1991, pursuant to the Federal Circuit's opinion in *Maier v. Orr,* 754 F.2d 973, 983 (Fed.Cir.1985), and the Court of Claims' opinion in *Austin v. United States,* 206 Ct.Cl. 719, 723–24, *cert. denied,* 423 U.S. 911, 96 S.Ct. 215, 46 L.Ed.2d 140 (1975). Said sentence on pages 691–692 which originally read—

"Finally, and pursuant to 28 U.S.C. § 2507(a)[31] and RUSCC 34(d) call,[32] the Secretary of the Army *shall* calculate the amount of any and all back pay and other benefits to which SP5 Rogers is entitled consistent with this opinion from the date of his involuntary discharge, *i.e.,* December 16, 1982, to the last day of the month in which said calculations are made"

was corrected to read—

"Finally, and pursuant to 28 U.S.C. § 2507(a)[31] and RUSCC 34(d) call,[32] the Secretary of the Army *shall* calculate the amount of any and all back pay and other benefits to which SP5 Rogers is

entitled consistent with this opinion from the date of his involuntary discharge, *i.e.,* December 16, 1982, to March 13, 1983 (the date of the expiration of his term of service or legal discharge) (citations omitted)."

Additionally, the court ordered the Clerk of the Court to enter judgment in favor of plaintiff and against defendant, consistent with the Department of the Army's response to the court's Call on December 19, 1991, in the amount of $4,187.70. No costs were awarded to either party.

On June 29, 1992, the Clerk entered judgment accordingly, in the amount of $4,187.70. No costs.

## FACTS

The detailed facts of this case are set forth in the court's opinion of December 19, 1991, *Rogers,* 24 Cl.Ct. 676. Therefore, only a brief overview will be given herein to facilitate an understanding of plaintiff's motion.

Mr. Rogers enlisted in the Army on January 9, 1978, and was assigned to the 296th Army Band as a guitar player on March 14, 1979. On June 2, 1979, he was apprehended for driving under the influence of intoxicating liquor (*i.e.,* drunk driving). On four other occasions, *i.e.,* on or about May 17, June 8 and 14, and October 1, 1982, the Army conducted surprise drug tests whereby Mr. Rogers was identified as an illegal drug user, namely, of marijuana. In the ensuing counseling process, plaintiff was determined to be a patient who was not making progress towards rehabilitation. It was recommended that he should therefore be released from the program as a rehabilitation failure. Consequently, on December 16, 1982, following recommendations that he be separated from service, Mr. Rogers was honorably discharged from the Army, despite the fact that the normal expiration date of his enlistment period was March 13, 1983.[4] Mr. Rogers' certificate of discharge, Form DD 214, while honorable, disclosed by separation code, and by narra-

---

**4.** "A serviceman does not have a right per se to remain in service until the expiration of his

enlistment." *Norman W. Birt v. United States,* 180 Ct.Cl. 910, 913 (1967).

tion, that the discharge was due to "DRUG ABUSE–REHABILITATION FAILURE."

Thereafter, in 1983, a governmental panel of experts in toxicology and drug testing concluded that although the Army's testing procedures were adequate, a percentage of the positive urinalysis reports were not scientifically or legally supportable for use in disciplinary or administrative actions. Consequently, a "Urinalysis Records Review Team" was formed to scrutinize all positive urinalysis reports obtained between April 1982 and October 1983. In reviewing Mr. Rogers' urine specimens of May 17, June 8, and June 14, 1982, the team determined that there were egregious deficiencies in either the scientific test procedures, the chain of custody documents, or both. Therefore, the review team and the Army Board for the Correction of Military Records (ABCMR) determined that any allegation of drug use by Mr. Rogers based on any of the foregoing three reports would not be legally or scientifically supportable in connection with adverse administrative or disciplinary actions. On the other hand, the fourth urinalysis test result of October 1, 1982, was determined to be supportable and sufficient to serve as a substantive basis for appropriate administrative action in a rehabilitation failure.

Given the foregoing, Mr. Rogers filed a petition with the ABCMR requesting that the defective urinalysis reports and any references thereto be deleted from his records and that any adverse administrative action taken pursuant to those defective tests, i.e., his involuntary discharge, be voided. Additionally, he sought to be restored to active duty with all appropriate back pay and benefits. On June 25, 1986, the ABCMR concluded that the positive urinalyses of May 17, and June 8 and 14, were either legally or scientifically insupportable and could not rightfully serve as the basis for adverse administrative or dis-

ciplinary action, and that said results were to be deleted from Mr. Rogers' military personnel and medical records. However, in view of the one (October 1, 1982) supportable urinalysis test result, the ABCMR nevertheless determined that Mr. Rogers was properly discharged from the Army on December 16, 1982. Following thereon, Mr. Rogers filed his complaint in this court on July 6, 1989, seeking "full reinstatement and all back pay and benefits."

After careful consideration of the above facts and relevant case law, the court's ruling on the parties' cross-motion for summary judgment, i.e., December 19, 1991, essentially held that the ABCMR had acted arbitrarily, capriciously, with an abuse of discretion, without substantial evidence, and contrary to law, when it failed and refused to reinstate Mr. Rogers to active duty with back pay and entitled benefits. *Rogers*, 24 Cl.Ct. at 691. The court, therefore, ordered that Mr. Rogers be restored to active duty in the Army at the rank of SP5 retroactively to December 16, 1982, that he receive the back pay to which he was entitled as part and parcel of that office from the date of his involuntary and unlawful discharge from active duty on December 16, 1982, and that he receive any and all additional relief as determined by the Secretary of the Army to which he is entitled, consistent with said opinion, and as required and permitted by law and regulations. *Id.*[5]

## CONTENTIONS

Mr. Rogers primarily contends in the subject motion that he is entitled to additional damages beyond that actually awarded by the court in its opinion, and at least the amount originally called for by the court in its December 19, 1991 interlocutory opinion.[6] Additionally, Mr. Rogers requests that the court transfer the case

---

5. Moreover, pursuant to 28 U.S.C. § 2507(a) and the RUSCC 34(d) call, the court ordered the Secretary of the Army to calculate the amount of any and all back pay and other benefits to which SP5 Rogers is entitled consistent with its opinion from the date of his involuntary discharge, i.e., December 16, 1982, to the date of

his legal discharge, i.e., March 13, 1983, and no costs were assessed.

6. Pursuant to the court's correction of its opinion on June 23, 1992, the Secretary of the Army filed a summary of the damages due Mr. Rogers totaling $4,187.70 on April 15, 1992.

back to the United States District Court for the Eastern District of Virginia, and stay any statute of limitations or fees accruing therefrom because he *now*, that is to say, *in the instant motion*, avers that he is entitled to $2 million in tort damages pursuant to the Federal Tort Claims Act, for alleged injuries suffered by his family from his wrongful discharge.

The defendant, in turn, totally opposes plaintiff's motion, in that it contends, consistent with the court's holding as to liability,[7] that Mr. Rogers is entitled to the entry of judgment only in the amount of $4,187.70.[8] Moreover, the defendant avers that the court lacks jurisdiction to re-transfer the subject action back to the district court because this court currently has jurisdiction to entertain Mr. Rogers' complaint, and may not re-transfer the case back to the district court pursuant to 28 U.S.C. § 1631.[9]

## ISSUES

1. *New Trial, Rehearing, Amendment and Reconsideration*

   (a) Was plaintiff's RUSCC 59(a) motion filed timely?

   (b) If so, is there any legal basis by which this court could grant back pay and benefits beyond the period of Mr. Rogers' term of enlistment, *i.e.*, March 13, 1983?

2. *Transfer/Re–Transfer to District Court*

   Should or may this court transfer/re-transfer to the United States District Court for the Eastern District of Virginia allegations of damages allegedly stemming in *tort* (family damages of $2 million) which were not previously averred in plaintiff's complaint in the Claims Court (or the District Court)?[10]

## DISCUSSION

■ First and foremost, the court, in considering plaintiff's motion for new trial, rehearing, amendment or reconsideration under RUSCC 59(a)(1) noted the operative language therein, which reads:

A new trial or rehearing or reconsideration may be granted to all or any of the parties and on all or part of the issues, for any of the reasons established by the rules of common law or equity applicable as between private parties in the courts of the United States. On a motion under this rule, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

A motion under RUSCC 59(a)(1) "is only efficacious, however, if it meets the requirements of RUSCC 59(b)." *Brown v. United States*, 5 Cl.Ct. 1, 16 (1984). RUSCC 59(b) provides in pertinent part:

Except as provided in subdivision (a)(2) of this rule, a motion filed pursuant to this rule *shall* be filed not later than *10 days after the entry of judgment.*

(emphasis added). Based on the clear and unambiguous language of the rule, the threshold question here becomes—whether the plaintiff filed his motion for new trial, rehearing, amendment, or reconsideration within the aforementioned time constraints. The court has no discretion to extend the date for filing motions under RUSCC 59(a) because RUSCC 59(b) clearly mandates that said motions *shall* be filed within 10 days after entry of judgment, and RUSCC

---

7. However, the defendant specifically reserves its right to appeal the court's decision as to liability.

8. The defendant cites to *Maier*, 754 F.2d 973, *Austin*, 206 Ct.Cl. 719, and *O'Callahan v. United States*, 196 Ct.Cl. 556, 559–60, 451 F.2d 1390 (1971), in support of its position that Mr. Rogers' sole entitlement under the Tucker Act "is the pay and allowance he would have accrued to the conclusion of his enlistment."

9. The defendant indicated that this alleged jurisdictional prerequisite was pursuant to 10 U.S.C. § 1631; however, there is no such section under Title 10. Accordingly, the court presumes that the defendant meant to cite 28 U.S.C. § 1631, "Transfer To Cure Want Of Jurisdiction."

10. *See* note 2.

6(b) [11] conclusively provides that the court may not extend the time for taking any action under Rule 59(b). Therefore, given the fact that the plaintiff filed his motion for new trial, rehearing, amendment or re-consideration on July 6, 1992, *i.e.*, seven days after the Clerk of the Court entered judgment on June 29, 1992, it is patently clear that the plaintiff has timely filed the subject motion.

■ In this connection, the next issue at hand is—whether there is any legal basis by which this court could justifiably grant Mr. Rogers back pay and benefits beyond the period of his term of enlistment, *i.e.*, March 13, 1983. We again conclude that there is not. This is true in light of the Federal Circuit's holding in *Maier*, 754 F.2d at 983, and the Court of Claims' ruling in *Austin*, 206 Ct.Cl. at 723–24, both of which are obligatory on this court. In *Maier* and in *Austin*, the respective courts therein held that enlistees in the military are not entitled to back pay and benefits beyond their current period of enlistment, because said enlistees have no right to reenlist at the expiration of their current enlistments. *Id.* Because we *must* follow the holdings of the Federal Circuit and our predecessor court, where said holdings are clearly applicable to the matters at hand, we are constrained to conclude that there is no legal basis by which this court could grant Mr. Rogers additional back pay and benefits beyond that which has already been granted by this court. That is to say, Mr. Rogers is only entitled to back pay and benefits from December 16, 1982 to March 13, 1983, in the net amount of $4,187.70. Therefore, we must deny plaintiff's motion for new trial, rehearing, amendment or reconsideration.

■ Given the foregoing, the sole remaining issue in plaintiff's subject motion before the court is—should or may this court transfer/re-transfer to the United States District Court for the Eastern District of Virginia, pursuant to 28 U.S.C. § 1631, allegations of damages stemming in *tort* (family damages of $2 million) which were not previously averred in plaintiff's complaint in the Claims Court or, for that matter, in the District Court. Title 28, § 1631 of the United States Code, is not a jurisdictional grant; it merely permits the transfer of an action to a court in which the action could have been brought at the time it was filed. *Orena v. United States*, 4 Cl.Ct. 81, 84 (1983). Primarily, the statute applies only to cases in which the transfer-or court lacks subject matter jurisdiction. *Omega v. United States*, 9 Cl.Ct. 623, 626 (1986). Thus, in order for a motion to transfer to be granted, the complaint must state a cause of action which could have been brought in *the* court to which the transfer is sought. *Orena* 4 Cl.Ct. at 84; *Omega*, 9 Cl.Ct. at 626. Moreover, a transfer is a potentially available option only where "the court finds that there is a want of jurisdiction" in the transferor court. 28 U.S.C. § 1631; *Omega*, 9 Cl.Ct. at 626; *First MultiFund For Daily Income v. United States*, 221 Ct.Cl. 123, 127 (1979).[12]

Applying the law to the facts of this case, it is clear beyond cavil that this court has jurisdiction over the matters herein pursuant to 28 U.S.C. § 1491(a) [13] and 10

---

11. RUSCC 6(b) provides in pertinent part:

When by these rules ... an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) order the period enlarged if request therefor is made by motion showing good cause before the expiration of the period originally prescribed ... or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect; *but it may not extend the time for taking any action under the Rule ... 59(b),....*

(emphasis added).

12. The Court of Claims stated in *First Multifund*, "[w]e know of no authority ... upon which we can transfer to another court a case over which we have jurisdiction."

13. 28 U.S.C. § 1491(a) (1988) states in part: (1) The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department.... (2) To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of an collateral to any such judgment, issue orders directing res-

U.S.C. § 1552.[14] This is so because, in reviewing the record in this case, we observed that the plaintiff failed to aver in his complaint in the Claims Court and in the District Court a claim based upon the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–80. If the plaintiff had so averred such a claim in this court, then pursuant to the jurisdictional constraints of the Tucker Act, we would have been without jurisdiction, and thus would have been required to transfer the tort aspect of the instant case, pursuant to 28 U.S.C. § 1631, to a court where jurisdiction was proper. 28 U.S.C. § 1491.[15] Additionally, if the plaintiff had initially averred a Federal Tort claim in the district court complaint, then the district court, of course, would not have transferred the *entire* case to this court, but rather would have maintained that portion of the case over which jurisdiction was proper, and would have transferred that portion of the case over which jurisdiction was improper, again pursuant to 28 U.S.C. § 1631. Therefore, because the plaintiff failed to aver a tort allegation in his complaint as required by 28 U.S.C. § 1631 for a transfer, and, more importantly, because both this court and the district court have ruled that jurisdiction is proper in the Claims Court, 28 U.S.C. § 1631 does not apply to the matters at hand.[16] *See Rogers*, 24 Cl.Ct. at 677; *Rogers v. United States Army*, No. C/A 88–811–N (E.D.VA. March 24, 1989) (order denying jurisdiction and transferring case to Claims Court); *Omega*, 9 Cl.Ct. at 627. For all of the foregoing reasons, we hereby deny plaintiff's request for transfer/re-transfer to the United States District Court for the Eastern District of Virginia.[17]

toration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States. In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just....

**14.** 10 U.S.C. § 1552 (1988) provides in pertinent parts that:

(a) The Secretary of a military department, under procedures established by him and approved by the Secretary of the Defense, and acting through boards of civilians of the executive part of the military department, may correct any military record of that department when he considers it necessary to correct an error or remove an injustice.... Except when procured by fraud, a correction under this section is final and conclusive on all officers of the United States.

\*     \*     \*     \*     \*     \*

(c) The Secretary concerned may pay, from applicable current appropriations, a claim for the loss of pay, allowances, compensation, emoluments, or other pecuniary benefits, or for the repayment of a fine or forfeiture, if, as a result of correcting a record under this section the amount is found to be due the claimant on account of his or another's service in the Army, Navy, Air Force, Marine Corps or Coast Guard, as the case may be....

The Senate Report on the bill, adding the payment provision to 10 U.S.C. § 1552 stated:

The purpose of the proposed legislation, as amended, is to authorize the Secretaries of the Army, ... to make certain payments which become due as a result of action taken by the respective Boards for the Correction of Records....

S.Rep. No. 923, 82d Cong., 1st Sess., *reprinted in* 1951 U.S.Code Cong. & Admin.News 2469.

**15.** *See Pinkston v. United States*, 6 Cl.Ct. 263, 265–67 (1984); *Singleton v. United States*, 6 Cl. Ct. 156, 164 (1984); *South Louisiana Grain Services v. United States*, 1 Cl.Ct. 281, 288 (1982).

**16.** For purposes of completeness, we note that the district court transferred the instant case to the Claims Court on plaintiff's motion to transfer for want of jurisdiction filed on February 28, 1989. In said motion, the plaintiff admitted that his prayer for "monetary relief in the form of back pay and benefits from December 15, 1982 until the present [*i.e.*, February 28, 1989] at approximately $1,000.00 per month, therefore, [was] in excess of $10,000.00." The district court, in ruling on said motion, on March 24, 1989, agreed with the plaintiff, in that it held that the court did not have jurisdiction over Mr. Rogers' claim in light of the fact that, if awarded, the claim would clearly exceed $10,000.00. *Cook v. Arentzen*, 582 F.2d 870 (4th Cir.1978). Not only have both the District Court for the Eastern District of Virginia and the Claims Court held that jurisdiction is proper in this court, but Mr. Rogers was also of the same mind at the time he initiated the transfer to this court.

**17.** We point out to the plaintiff, moreover, that in light of (1) the circumstances surrounding the instant case, *i.e.*, the plaintiff's motion to transfer here wherein the plaintiff admitted that damages were in excess of $10,000; (2) the district court's then lack of jurisdiction; (3) our clear jurisdiction; and (4) the court's final entry

## CONCLUSION

Given all of the foregoing, we are compelled to conclude that—plaintiff's motion (for new trial, rehearing, amendment or reconsideration, etc.) is hereby DENIED. Moreover, because this court has jurisdiction over the matters filed in plaintiff's complaint pursuant to 28 U.S.C. § 1491(a) and 10 U.S.C. § 1552, and the fact that the plaintiff failed to allege a tort claim under the Federal Tort Claims Act in said complaint, the court may not re-transfer this action back to the United States District Court for the Eastern District of Virginia pursuant to 28 U.S.C. § 1631.

IT IS SO ORDERED.

of judgment on the cross-motions for summary judgment in plaintiff's favor, the interests of justice would not require us to retransfer this case back to the district court.